## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

NIKOLAUS KRIZ,

      Plaintiff,

v.                                Case No. 8:20-cv-2995-KKM-SPF

CHRISTOPHER NOCCO, JEFFREY
HARRINGTON, KEN GREGORY,
CLINTON CABBAGE,
KEITH MCCARTHY, and DUSTIN BROOKS,

      Defendants.

_____/

## ORDER

Plaintiff Nikolaus Kriz is a former employee of the Pasco County Sheriff's Office who brings constitutional and Racketeer Influenced and Corrupt Organizations Act (RICO) claims against his former supervisors and colleagues. His efforts to transform his commonplace employment disputes into RICO and constitutional ones are unsuccessful. Instead, Kriz's amended complaint fails to state a claim upon which relief can be granted. As a result, the Court grants Defendants' motion to dismiss (Doc. 19), dismisses Kriz's amended complaint with prejudice, and directs the clerk to enter judgment in Defendants' favor.

## I.      Procedural History

The history of this litigation is both protracted and procedurally painful, yet with little advancement on the merits. On April 16, 2019, Christopher J. Squitieri and two other plaintiffs filed a complaint against fifteen defendants, all of whom were current or former employees of the Pasco County Sheriff's Office ("Squitieri litigation"), alleging a civil RICO and state law claim. *See Squitieri v. Nocco*, 8:19-cv-0906-KKM-AAS. A couple months later, an amended complaint was filed in the case; it named twenty plaintiffs— including Kriz—and forty-five defendants. After receiving leave from the Court (at that time, the case was before the Honorable Charlene Honeywell), the Squitieri litigation plaintiffs filed a second amended complaint on August 7, 2019. Defendants moved to dismiss plaintiffs' second amended complaint less than a week later. During a hearing on defendants' motion to dismiss, Judge Honeywell step-by-step explained the deficiencies remaining in the plaintiffs' pleading and orally granted-in-part defendants' motion to dismiss the second amended complaint and directed plaintiffs to file a third amended complaint that complied with the Federal Rules of Civil Procedure. The Squitieri litigation plaintiffs filed a third amended complaint, which defendants again moved to dismiss.

After entering an order to show cause and considering plaintiffs' response, Judge Honeywell severed the Squitieri litigation claims and ordered plaintiffs to pursue their claims in separate actions against the appropriate defendants by December 16, 2020.

Kriz initiated this action by filing a complaint against Defendants Christopher Nocco, Jeffrey Harrington, Ken Gregory, Clinton Cabbage, Keith McCarthy, and Dustin Brooks. (Doc. 1.) Kriz then filed an amended complaint on February 19, 2021, alleging a civil RICO claim (Count I) and various constitutional violations (Count II). (Doc. 15.) Defendants move to dismiss the amended complaint as a shotgun pleading and for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. 19.) Kriz opposes the motion to dismiss (Doc. 23), and the Court stayed discovery pending the resolution of the motion (Doc. 24).

## II.    Factual Background

Kriz's amended complaint recounts several painful encounters between him and the Defendants leading up to the filing of this complaint. Most of the allegations explain confrontations between Kriz and the Defendants that followed from his filing a complaint against two coworkers, but some allegations are more tangential to the complaint. In January of 2019, Kriz found out that two of his coworkers were having an affair with his wife, one of which had previously been reported for choking a Sheriff's Deputy. (*Id.* at ¶¶ 27-28, 30.) In response, Kriz filed an Internal Affairs Complaint against both. (*Id.* at ¶ 28.) A captain at the Sheriff's Office then approached Kriz and "asked him if he was sure he wanted to open these complaints," the "first attempt to pressure him into not moving forward with the Complaints against" the coworkers. (*Id.* at ¶ 29.)

A month later, Kriz was approached at his home by three of the Defendants who said "they were worried about his wellbeing" after he did not answer his phone. (*Id.* at ¶ 31.) Kriz told them he was fine and that he "was not suicidal or trying to hurt himself or anyone else"—nonetheless, the three Defendants told Kriz they wanted him to "talk to someone." (*Id.* at ¶ 33.) When he asked whether they were trying to Baker Act him, "they told him they could make it hard (meaning handcuffs and by force) or easy (meaning voluntarily going)." (*Id.*) Kriz was then Baker Acted and released sixteen hours later and "immediately returned to his patrol duties for the next work shift." (*Id.* at 35.) When he went back to work, Sheriff's Deputies stopped his vehicle and "shined a light in his eyes" and said "Okay, see you later." (*Id.* at 36.)

At some point—the complaint does not specify—all of the Defendants "pinged" Kriz's phone to find him. (*Id.* at ¶ 40.) Defendant Brooks then approached Kriz with "approximately ten . . . other deputies," purportedly for a welfare check on Kriz's children. (*Id.* at ¶ 41.) Kriz asked them to leave but Brooks proceeded to grab Kriz and throw him to the ground before a Sheriff's Office Lieutenant intervened, telling Brooks they did not have the right to use force. (*Id.* at ¶¶ 42– 43.) Brooks told Kriz that "[w]e know what you're up to. . . . [Y]ou're lucky the Lieutenant is here or you would be going to jail." (*Id.* at ¶ 44.) Kriz claimed that Brooks had no charges and Brooks replied he would "make one up." (*Id.* at ¶ 45.)

In his amended complaint, Kriz also describes the "Intelligence Led Policing" program that the Sheriff's Office had implemented. Kriz alleges the ILP program is unconstitutional, "targets those deemed to be 'prolific offenders,'" and instructs law enforcement "to focus [their] efforts on those criminals who [they] have reason to believe are frequent or prolific offenders." (*Id.* at ¶ 20.) "The major problem with the ILP practices," Kriz alleges, is that they rest on the notion that "[s]peed is critical to success and bureaucratic processes that delay implementation must be overcome"—even if those "bureaucratic processes" "are the fundamental constitutional considerations of 'probable cause' and the many other constitutional protections that apply to all citizens in a free society." (*Id.* at ¶ 21.) When Kriz did not "play[] along" and "enforc[e] the unconstitutional dimensions and components of the ILP Program against innocent citizens of Pasco County," Defendants retaliated against him with the above-described "baseless internal departmental investigation intended to ruin [his] career." (*Id.* at ¶¶ 23, 24.)

## III.   Analysis

### a.   Failure to State a Claim under Rule 12(b)(6)

Kriz, in the heading of Count I, alleges "violations of federal and state racketeering statutes." (Doc. 15 at 9.) Kriz alleges the Defendants tampered and retaliated against witnesses, victims or informants but otherwise fails to inform the Court or the Defendants how this constitutes racketeering. The Court assumes that these allegations are not pleaded

as independent criminal violations of 18 U.S.C. §§ 1512(b) and 1513(b)(1), as those violations cannot be brought by private parties absent some other legal mechanism. *See Smith v. JP Morgan Chase*, 837 F. App'x 769, 770 (11th Cir. 2021) (per curiam) ("[T]his Court has concluded that criminal statutes do not provide for private civil causes of action, so it follows that [Plaintiff's] Title 18 allegations are also without merit because those criminal statutes do not provide for private causes of action."). Instead, and in the light of the heading of Count I, the Court assumes these allegations are alleged solely as predicate acts for a RICO claim under 18 U.S.C. § 1962 as predicate acts are defined in § 1961(1).

Likewise, Kriz alleges violations of sections 914.22 and 914.23 of the Florida Statutes for harassment and retaliation against witnesses, victims, or informants. Under section 914.24 of the Florida Statutes, civil actions can only be brought for violations of 914.22 and 914.23 "upon application of the state attorney." *See also Anthony Distributors, Inc. v. Miller Brewing Co.*, 882 F. Supp. 1024, 1034 (M.D. Fla. 1995) (denying compensatory, exemplary, and punitive relief where plaintiff alleged violations of 914.22 and 914.23 because "[n]either statute provides for an award of compensatory damages" and "the state attorney is the party authorized to request [equitable] relief on behalf of the witnesses"). As Kriz is not the state attorney, he cannot bring an action for violations of 914.22 and 914.23 of the Florida Statutes absent some civil enforcement mechanism, like RICO.

Given Kriz's inability to bring independent actions for violations of 18 U.S.C. §§ 1512 and 1513 or actions for violations of sections 914.22 and 914.23 of the Florida Statutes, the Court analyzes these allegations as predicate acts under the federal RICO statute. Defendants argue that Kriz's claims—the civil RICO claim and constitutional claims—fail to state a claim upon which relief may be granted. (Doc. 19 at 7–21.) The Court agrees.

### i. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.*

When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should limit

their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

### ii.  RICO Claim

#### 1.  Legal Standard

The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, provides a private right of action for treble damages to "[a]ny person injured in his business or property by reason of a violation" of the Act's criminal prohibitions. § 1964(c); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 641 (2008). To state a prima facie civil RICO claim under § 1964(c), a plaintiff must establish "three essential elements: first, that the defendant[s] committed a pattern of RICO predicate acts under 18 U.S.C. § 1962; second, that the plaintiff suffered injury to business or property; and, finally, that the defendant[s'] racketeering activity proximately caused the injury." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014) (citations and punctuation omitted). Failing to adequately plead any one of these elements warrants dismissal of the plaintiff's complaint for failure to state a claim upon which relief may be granted. *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). Because Kriz failed to plead factual allegations to establish the requisite predicate acts of racketeering activity, the Court dismisses Kriz's amended complaint for failing to state a claim.

8

## 2. Kriz fails to plead any predicate acts under 18 U.S.C. § 1961(1).

An act of racketeering activity, commonly known as a "predicate act," is statutorily defined and includes a long list of state and federal crimes. *See* 18 U.S.C. § 1961(1). Kriz alleges that Defendants have "engaged in a pattern and practice, through the Pasco [County] Sheriff's Office, of engaging in 'racketeering activity'" through the following predicate acts[1]: (1) tampering with a witness, victim, or informant under 18 U.S.C. § 1512(b); (2) retaliating against a witness, victim, or informant under § 1513(b)(1); and (3) tampering, harassing, and retaliating against a witness, victim, or informant under sections 914.22 and 914.23 of the Florida Statutes.[2] (Doc. 15 at ¶¶ 13, 37–41.) Section

---

[1] In the first paragraph of his general allegations, Kriz alleges that Defendants engaged in racketeering activity through (1) mail fraud under 18 U.S.C. § 1341 and (2) wire fraud under § 1343. (Doc. 15 at ¶ 14.) But Kriz fails to mention these alleged predicate acts anywhere else in his complaint, including his RICO count. In the absence of any additional factual allegations to support these alleged predicate acts, Kriz fails to properly plead them. Kriz also appears to allege a new predicate act in his response to the Defendants' Motion to Dismiss when he argues that the Defendants extorted him in violation of section 836.05 of the Florida Statutes. (Doc. 23 at 8–9.) The Court will not consider a predicate act raised for the first time in Kriz's response to the Defendants' motion to dismiss. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (denying the plaintiff's attempt to raise a new claim in a response to a summary judgment motion); *Horowitz v. Pfizer Inc.*, No. 2:20-CV-955-JLB-NPM, 2021 WL 3679101, at *2 (M.D. Fla. Aug. 19, 2021) (Badalamenti, J.) (refusing to "consider any new factual allegations . . . raise[d] in [the plaintiff's] responses"); *Boyer v. Bd. of Cty. Comm'rs of Cty. of Johnson Cty.*, 922 F. Supp. 476, 482 (D. Kan. 1996) ("It is inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time."), *aff'd sub nom. Boyer v. Johnson Cty. Bd. of Cty. Comm'rs*, 108 F.3d 1388 (10th Cir. 1997).

[2] Kriz also alleges that Defendants violated Florida's RICO statute. But in pleading his state law claim, Kriz cites only to section 895.02(8)(b), Florida Statutes—the Florida *criminal* RICO statute. Not only is this state law claim insufficiently pleaded, section 895.05(6) limits the relief available for a private person to injunctive relief. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1302 n.18 (11th Cir. 1998) (explaining that section 895.05(6) of the Florida criminal RICO statute "allows a private plaintiff to bring a civil suit for equitable relief only"). Because Kriz is no longer an employee of the Pasco County Sheriff's Office and has alleged no threat of future injury, he lacks standing to seek injunctive relief under Florida law. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364 (2011) (noting that

1961(1) defines "racketeering" activity, in relevant part, as "any act or threat involving bribery [or] extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year," or one of many federal offenses. "A plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Cisneros*, 972 F.3d at 1215. Kriz has not sufficiently pleaded any predicate act under § 1961(1).

> ### a.  Kriz fails to plead any violation of either 18 U.S.C. § 1512(b) or § 1513(b)(1).

Kriz alleges that Defendants violated 18 U.S.C. § 1512(b) (tampering with a witness, victim, or an informant) and 18 U.S.C. § 1513(b)(1) (retaliating against a witness, victim, or informant), predicate acts under § 1961(1). But § 1512(b) prohibits interference with those testifying in an "official proceeding" and § 1513(b)(1) prohibits engaging in conduct with the intent to retaliate against someone's attendance or testimony in an

---

plaintiffs who were former employees no longer employed by the defendant "lack[ed] standing to seek injunctive or declaratory relief against its employment practices"); *Drayton v. W. Auto Supply Co.*, No. 01-10415, 2002 WL 32508918, at *4 (11th Cir. Mar. 11, 2002) ("[T]his Court has held that former employees who submit no fact that they will be discriminated against in the future lack standing to seek an injunction." (alteration in original) (citing *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997))). Although Kriz argues in his response to Defendants' motion to dismiss that "[t]he injunctive relief requested under [Florida law] is the correction of the false Internal Affairs reports that continue to damage [Kriz] by damaging his reputation and ability to find a job in law enforcement" and that he does not seek an injunction based on "employment practices" (Doc. 23 at 4), this argument fails. Kriz does not mention injunctive relief anywhere in his amended complaint (*see* Doc. 15), much less allege facts sufficient to plead the elements entitling him to such relief. Further, neither his amended complaint (*see* Doc. 15) nor his response (*see* Doc. 23) contain allegations explaining how an injunction could provide the relief he seeks (correcting an internal affairs report) or explaining how this relief is connected to any racketeering activity, as required under Florida's criminal RICO statute.

"official proceeding." Specifically, Kriz alleges Defendants "knowingly attempted to corruptly persuade [Kriz] from pursuing his claims against Detective Monte Shuler and Training Analyst Kayhler McPhail," (*id*. at ¶ 48), and "knowingly retaliated against [Kriz] for his testimony on record against Detective Monte Shuler and Training Analyst Kayhler McPhail by Threatening to forcefully and illegally Baker Act[] him without cause and harassed and assaulted him in his home," (*id*. at ¶ 49). Because Kriz never alleges that he was involved in an "official proceeding," as statutorily defined, he fails to plausibly plead a violation of § 1512(b) or § 1513(b)(1).

Section 1512(b) subjects anyone to fine or imprisonment or both who knowingly uses—or attempts to use—intimidation, threats, or persuasion to influence, delay, or prevent the testimony of any person in an official proceeding.[3] Section 1513(b)(1), for its

---

[3] Subsection (b) states in full:

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to--
>> (1) influence, delay, or prevent the testimony of any person *in an official proceeding*;
>> (2) cause or induce any person to--
>>> (A) withhold testimony, or withhold a record, document, or other object, *from an official proceeding*;
>>> (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use *in an official proceeding*;
>>> (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, *in an official proceeding*; or
>>> (D) be absent from an *official proceeding* to which such person has been summoned by legal process; or
>> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible

11

part, subjects anyone to a fine or imprisonment or both who causes harm to another or damages their property for a witness or party attending an official proceeding or any testimony or evidence produced in an official proceeding. As Defendants point out, the statute repeatedly states that such conduct is prohibited in an "official proceeding." (Doc. 19 at 4.) The statute defines "official proceeding" as either (A) "a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury"; (B) "a proceeding before the Congress"; (C) "a proceeding before a Federal Government agency which is authorized by law"; or (D) "a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce." 18 U.S.C. § 1515(a)(1).

Kriz identifies no testimony, witness, threats, or otherwise intimidating conduct in his amended complaint that involve an official proceeding. Any internal affairs investigation in the Sheriff's Office or any related report or statement cannot satisfy the

_____

commission of a Federal offense or a violation of conditions of probation supervised release, parole, or release pending judicial proceedings;

shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(b) (footnotes omitted; emphasis added).

statutory definition under § 1515(a)(1). Kriz thus fails to plead a predicate act under § 1512(b) or § 1513(b)(1) on which a RICO claim could be based.

### b. Kriz fails to sufficiently allege a violation of sections 914.22 or 914.23 of the Florida Statues.

Kriz further alleges, as predicate acts for a RICO violation, that the Defendants violated sections 914.22 and 914.23 of the Florida Statutes by tampering, harassing, or retaliating against a witness, victim, or informant. Because the Court is unable to identify whether Kriz alleges the Defendants used "intimidation," "physical force," or "threat[s]" or some combination and whether Kriz even alleges there was testimony the Defendants intended to induce Kriz to withhold, he fails to sufficiently plead a violation of section 914.22. And because Kriz fails to allege any official proceeding that he attended or testified in or would testify in, he fails to sufficiently plead section 914.23.

Section 914.22 of the Florida Statutes proscribes intimidation, threats, or bribery to induce someone to withhold testimony from an official investigation or proceeding and harassment that prevents or dissuades someone from attending or testifying in an official investigation or proceeding. Kriz alleges elsewhere that he filed a complaint against two other Sheriff's Deputies for an affair they allegedly had with Kriz's wife. He further alleges that the Defendants detained Kriz involuntarily under the Baker Act in retaliation for Kriz's complaint, stopped Kriz in a traffic stop and shined a light in his eyes, and eventually

threw him to the ground outside Kriz's friend's house, all because of Kriz filing the complaint.

The Court assumes that these acts would constitute some form of intimidation, physical force, or threats, satisfying one element of section 914.22. But section 914.22 also requires that such actions be taken with "intent to cause or induce any person to" take a long list of actions, some of which are the withholding of testimony, records, documents, or objects from an official investigation, the destruction of objects with intent to impair the integrity of the object for an investigation, or the hindrance of communication to a law enforcement officer information related to a possible commission of an offense. The Court is unable to see any allegation that the Defendants "inten[ded] to cause or induce [Kriz] to" take any of those enumerated actions. Although Kriz alleges that he was "pressure[d] . . . into not moving forward with the Complaints against [the coworkers]," (Doc. 15 at ¶ 29), he does not identify any further testimony or evidence that he wanted to provide that the Defendants intended to induce him to withhold or destroy.

Kriz also alleges that the Defendants violated 914.23 by retaliating against a witness, victim, or informant. This section proscribes "caus[ing] bodily injury to another person or damag[ing] the tangible property of another person, or threaten[ing] to do so" as retaliation for a person's attendance or testimony in an official proceeding. Section 914.21(4), in turn, defines "official proceeding" as a proceeding before a judge, court, grand jury, the

14

legislature, a federal agency authorized by law, or the Commission on Ethics. Kriz does not allege that he attended or gave testimony in any proceeding before a judge, court, grand jury, legislature, federal agency, or the Commission on Ethics. His complaint about his coworkers falls outside these enumerated proceedings.

### iii.   Count II: Constitutional Violations

A generous reading of the amended complaint reveals allegations of violations of Kriz's constitutional rights under the First, Fifth, and Fourteenth Amendments.[4] (Doc. 15 at ¶¶ 44–47.) But because Kriz does not sufficiently state a claim upon which relief can be granted, his constitutional claims fail. Specifically, as Defendants argue, "Kriz's Amended Complaint fails to allege how his constitutional rights were infringed/implicated by Defendants' alleged conduct." (Doc. 19 at 19.)

As for the First Amendment claim, Kriz alleges that "Defendants, in their official capacities, punished [Kriz] for exercising his First Amendment rights." (Doc. 15 at ¶ 53.)

---

[4] At the beginning of his amended complaint, Kriz explains that this action arises under the "Fourth, Fifth, and Fourteenth Amendment[s] to the United States Constitution" and in Count II, he mentions the First, Fifth and Fourteenth Amendments. (Doc. 15 at ¶¶ 2, 53, 55.) No Fourth Amendment violation is pleaded in Count II, so the Court assumes it was an error. As for the Fifth and Fourteenth Amendment claims, Kriz provides only conclusory statements and wholly fails to support his conclusions with factual allegations. In the penultimate paragraph of Count II of his amended complaint, Kriz states that Defendants, in their official capacities, "denie[d Kriz] equal protection of the law in that the Defendants' conduct was arbitrary, oppressive and capricious and unreasonably required [Kriz] to submit to controls not imposed on other similarly situated Sheriff's Deputies" and "constitute[d] an unlawful and unauthorized taking of [Kriz's] job via forced resignation, his 'private property,' without just compensation, without due process of law, and without a public purpose, in violation of the [Fifth] Amendment." (Doc. 15 at ¶ 55.) Kriz never includes any other allegations relating to these constitutional claims. And "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679.

Although Kriz's amended complaint includes several legal conclusions—e.g., that Defendants "abridged and restrained [Kriz's] rights to free speech" and the violation of Kriz's First Amendment rights "constitutes an impermissible 'chilling effect' on constitutionally protected speech and expression," (*id.* at ¶ 55)—it does not include factual allegations to support his claim. For example, the amended complaint does not identify the speech that the Defendants allegedly "abridged and restrained." His complaint about his coworkers? Perhaps, but in his response to the Defendants' motion to dismiss, Kriz argues that "he exercised his right to free speech by speaking up against the misconduct of Defendants, and by refusing to stop his pursuit of justice for the misconduct." (Doc. 23 at 13.) Given such rhetoric, was he talking about the ILP program? The amended complaint does not specify. But even were the pleading more specific, Kriz fails to establish that he was speaking as a private citizen on a matter of public concern instead of as a government employee or explain how this unidentified speech was connected to Defendants' allegedly retaliatory action. *See Lamar v. Clayton Cnty. Sch. Dist.*, 605 F. App'x 804, 806–07 (11th Cir. 2015).

But the fatal flaw of the amended complaint is a lack of any theory of municipal liability. Kriz brings Count II against Defendants in their official capacities only. (*See* Doc. 15 at ¶¶ 52, 53, 55, 56.) "A suit against a municipal officer in his official capacity is effectively a suit against the government entity that the officer represents." *Lopez v.*

16

*Gibson*, 770 F. App'x 982, 991 (11th Cir. 2019). Thus, a suit against Defendant Nocco is effectively an action against the governmental entity that Defendant Nocco represents—here, Pasco County. *Id.*; *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005). And municipal liability exists only when a "'policy or custom' of the municipality inflicts the injury." *Cook ex rel. Estate of Tessier*, 402 F.3d at 1116; *see Lopez*, 770 F. App'x at 991. An official policy or custom can manifest in several ways. For example, municipal liability may be premised on a single illegal act by a municipal officer—but only "when the challenged act may fairly be said to represent official policy, such as when that municipal officer possesses final policymaking authority over the relevant subject matter." *Lopez*, 770 F. App'x at 991 (quotation omitted).

Although Kriz argues that retaliating against employees for exercising their First Amendment rights is "the policy and custom of the Sheriff's Office," (Doc. 23 at 13), Kriz does not demonstrate how retaliation represents official policy or identify a municipal officer with final policymaking authority who implemented this policy against him. And Kriz's statement that the "policy and custom" of the Sheriff's Office was to violate its employees' First Amendment rights is a generalized conclusion that alone cannot establish liability for the Sheriff's Office. Further, this argument is confined to Kriz's response; the

amended complaint is devoid of any such allegations. Accordingly, Kriz's constitutional claims fail.[5]

## IV.    Conclusion

In total between the Squitieri litigation and here, Kriz has filed five complaints. And after quintuple chances, his amended complaint remains deficient and warrants dismissal for failure to state a claim upon which relief may be granted. Kriz received more than fair notice of the defects in his complaint, yet rebuffed all warnings to remedy them. Accordingly, the Court dismisses this case with prejudice. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018); *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018); *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014).

Accordingly, it is **ORDERED**:

(1) Defendants' motion to dismiss Kriz's amended complaint is **GRANTED**. (Doc. 19).

---

[5] Kriz's amended complaint almost certainly also fails as an impermissible shotgun pleading. *SeeWeiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). It contains "conclusory, vague, and immaterial facts obviously not connected to any particular cause of action," *id.*, and fails to separate into separate counts each claim for relief (both in Count I premised on the federal and state RICO statues and Count II which lists a host of constitutional violations). But because the claims appear with enough clarity for this Court to analyze and reject them for substantive pleading deficiencies and because Kriz's counsel repeatedly rejected earlier judicial warnings about shotgun pleading problems, the Court will not expend additional resources explaining in detail why they once again fail to satisfy Federal Rules of Civil Procedure 8 and 10.

(2) The Court **DISMISSES WITH PREJUDICE** Counts I and II of Kriz's amended

complaint (Doc. 15) and **DISMISSES THIS ACTION**.

(3) The Clerk is directed to enter judgment in favor of Defendants, terminate any

pending motions and deadlines, and to close the case.

**ORDERED** in Tampa, Florida, on September 8, 2021.

Kathryn Kimball Mizelle
United States District Judge